Albert E. BENDER, Sr., Richard A. Frost and Charles E. Hawkins, Appellants,

v.

FOREST PARK FOREVER, INC., The City of St. Louis, Francis G. Slay, Mayor of the City of St. Louis, Gary D. Bess, Director of St. Louis Department of Parks, Recreation and Forestry, and Darlene Green, Comptroller of the City of St. Louis, Respondents.

No. ED 83852.

Missouri Court of Appeals, Eastern District, Division Two.

June 15, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 2004.

Application for Transfer Denied Sept. 28, 2004.

Tom Mendelson, St. Louis, MO, for appellant.

Paul T. Krispin, Jr., Clayton, MO, for respondent.

## OPINION

GLENN A. NORTON, Presiding Judge.

Albert Bender, Richard Frost and Charles Hawkins appeal the judgment dismissing their petition challenging the renovation of the Lindell Pavilion in Forest Park. We affirm.

## I. BACKGROUND

Bender and the other plaintiffs sought relief under section 89.491 RSMo 2000,[1] asserting that a lease issued to Forest Park Forever, Inc. ("FPF") for renovation of the Lindell Pavilion, and the ordinance authorizing that lease, violated the standards of use established for the Pavilion in the Forest Park Master Plan adopted under chapter 89 and violated procedural requirements of that chapter as well. They also sought declaratory and injunc-

tive relief, alleging that the lease and ordinance violated other City of St. Louis ordinances and charter provisions, state statutes and constitutional provisions. FPF moved to dismiss the petition on the grounds that the plaintiffs lacked standing, their claims were not ripe and the petition failed to state a claim. The court granted FPF's motion, and the plaintiffs appeal.[2]

## II. DISCUSSION

We will affirm this judgment if it can be sustained on any ground alleged in the motion to dismiss, regardless of the trial court's basis for granting the motion. *Farm Bureau Town and Country Insurance Company of Missouri v. Angoff,* 909 S.W.2d 348, 351 (Mo. banc 1995). We find that the plaintiffs lacked standing, as alleged in the motion, and affirm the dismissal on that basis.

"Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve School District R II v. Board of Aldermen of City of Ste. Genevieve,* 66 S.W.3d 6, 10 (Mo. banc 2002). This "personal stake" is shown by alleging a threatened or actual injury resulting from the challenged action. *Rodriguez v. Suzuki Motor Corp.,* 996 S.W.2d 47, 53 (Mo. banc 1999); *City of St. Louis v. K & K Investments, Inc.,* 21 S.W.3d 891, 895 (Mo.App. E.D.2000). The party seeking relief must show that he is sufficiently affected by the challenged action to justify consideration by the court and that the action violates his particular rights and not those of some

---

1. All statutory references are to RSMo 2000.

2. Although the case was dismissed without prejudice, the dismissal had the practical effect of terminating the action in the form cast, and, thus, we have jurisdiction over this appeal. *See Jeffrey v. Cathers,* 104 S.W.3d 424, 428 (Mo.App. E.D.2003).

third party. *Wahl v. Braun*, 980 S.W.2d 322, 325 (Mo.App. E.D.1998).

The plaintiffs contend that they have standing to bring a claim under section 89.491, which provides that "any person ... aggrieved by a violation" of chapter 89 may bring a civil action. Section 89.491.1. Standing under this section depends on whether the plaintiff is "aggrieved" by the alleged violation. Although our courts have not interpreted the meaning of "aggrieved" in this section, we find the cases construing "aggrieved" under section 89.110—authorizing judicial review of a board of adjustment decision—instructive.[3] *See generally Martinez v. State*, 24 S.W.3d 10, 18 (Mo.App. E.D.2000) (one part of statute should not be read in isolation from context of whole act); *United ed Distributors v. Department of Public Safety, Division of Liquor Control*, 31 S.W.3d 49, 53 (Mo.App. W.D.2000) (statutes relating to same subject should be construed consistently). To be "aggrieved" under section 89.110, the plaintiff must have a specific and legally cognizable interest in the subject matter of the decision and be directly and substantially affected by the decision. *Wehrle v. Cassor*, 708 S.W.2d 788, 791 (Mo.App. E.D.1986) (citing *Palmer v. St. Louis County*, 591 S.W.2d 39, 41 (Mo.App. E.D.1979)); *see also State ex rel. Columbus Park Community Council v. Board of Zoning Adjustment of Kansas City*, 864 S.W.2d 437, 440 (Mo.App. W.D.1993). The plaintiff's interest must be affected more distinctly and directly than the interest of the public generally. *Lenette Realty & Investment Co. v. City of Chesterfield*, 35 S.W.3d 399, 405 (Mo.App. E.D.2000); *Palmer*, 591 S.W.2d at 41.

We determine standing as a matter of law based on the petition and any other non-contested facts accepted as true by the parties at the time of the motion to dismiss. *Home Builders Association of Greater St. Louis, Inc. v. City of Wildwood*, 32 S.W.3d 612, 614 (Mo.App. E.D. 2000). Here, the plaintiffs alleged in the petition that they have rented lockers at the Lindell Pavilion for a number of years, have enjoyed using the Pavilion as a public recreational facility and wish to continue doing so. They cited to the Master Plan's requirement that the Pavilion be used as an active recreation support facility with visitor services, such as public concessions, lockers, showers and toilets. The plaintiffs asserted that FPF plans to operate an office and a public and private banquet facility that will overtake areas formerly occupied by the locker rooms. As a result, the locker rooms will be "greatly reduced in size" and "relocated from the main to the lower level." FPF's plans, they claimed, will also increase "upkeep" costs and result in the escalation of the "traditionally nominally-priced membership in the locker rooms ... to a private-club and exclusionary scale." "For this reason, and because of other burdensome terms and conditions FPF has created and imposed surrounding the use of the Pavilion and its locker rooms, the plaintiffs would find it unaffordable or uneconomical or prohibitively impractical to continue to rent lockers at the Pavilion." Finally, the plaintiffs alleged that FPF seeks to make the recreational and visitor center uses of the Pavilion subservient to its use as a banquet facility, "all to the detriment of the plaintiffs." They contended that they would suffer irreparable damage if FPF is al-

---

**3.** Section 89.110 provides, in relevant part, "[a]ny person or persons jointly or severally aggrieved by any decision of the board of adjustment ... may present to the circuit court ... a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality."

lowed to use and control the Pavilion as set forth in the lease.

 On appeal, the plaintiffs argue that simply by alleging that they have used and continue to want to use the Pavilion as a public recreational facility, they have standing. But nowhere do they allege that the Pavilion is not or will not continue to be used in that manner. In fact, the lease allegedly at odds with these uses, as cited in the petition, expressly *includes* the public services the plaintiffs claim they wish to continue using—visitors center, lockers, showers and food service. The plaintiffs complain only that the Pavilion will *also* be used for other functions and that the locker room will be smaller, in a different place and accessible at a higher price. They admit on appeal that their allegations of a more burdensome rental fee and other terms are speculative. The plaintiffs have not even alleged any legally cognizable interest in the locker room being in a certain location or a certain size or in renting lockers at a particular price or on particular terms. The plaintiffs do not otherwise articulate how their desire to use the Pavilion as set forth in the Master Plan will be harmed or sufficiently affected by FPF's plans. Court intervention, therefore, is not justified. *See Wahl*, 980 S.W.2d at 325.

Challenges to the manner in which a public facility is being used are, by their nature, capable of being made by any member of the public. Thus, it is important to limit recovery under section 89.491 to "aggrieved" members of the public— those who can demonstrate a direct, specific and legally cognizable interest in and

harm from the alleged violation distinct from the interests of and harm to the general public. *See Citizens for Safe Waste Management v. St. Louis County*, 810 S.W.2d 635, 639 (Mo.App. E.D.1991). Here, the plaintiffs have not shown that they are harmed by FPF's use of the Pavilion—even if that use violates chapter 89—in a manner distinct from the way any such use would affect the public generally.

Because the plaintiffs lacked standing to bring these claims, their petition was properly dismissed.[4] All points on appeal are denied.

### III.   CONCLUSION

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge, and MARY K. HOFF, J., concurring.

---

4. On appeal, the plaintiffs only argue that they have standing to bring the statutory claim. They *do not present any argument* as to their standing to seek declaratory judgment and injunctive relief regarding the validity of the lease and ordinance under other laws; in

that point on appeal, they contend only that they stated a claim. Nevertheless, because the *plaintiffs' allegations of injury are insuffi*-cient, they lack standing to bring that claim as well, and dismissal of the entire petition was appropriate.